UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 13-60947-CIV-MARRA

INTERNATIONAL YACHT BUREAU, INC.
a Florida corporation, and JACOB
DESVERGERS, an individual,

       Plaintiff,

vs.

INTERNATIONAL REGISTRIES, INC.,
a Virginia corporation,

       Defendant.

_____/

## OPINION AND ORDER

This cause is before the Court upon Defendant International Registries, Inc.'s Motion to Stay

this Action in Favor of Compelling Arbitration in New York (DE 4). Plaintiffs responded (DE 10),

and Defendant replied (DE 16). After conducting discovery on the issue of arbitrability, the parties

submitted supplemental briefs. (DE 29, 30). Subsequently, Plaintiffs filed a Supplemental Affidavit

of Jacob Desvergers (DE 31), to which Defendant objected (DE 33). This matter is now ripe for

review. The Court has considered the briefs and the record, and is otherwise advised in the premises.

### I. Background

The following facts are pertinent to this dispute. The Trust Company of Marshall Islands

("TCMI") is the Republic of Marshall Islands' Maritime Administrator. Apr. 22, 2013 Kirby Aff.,

¶ 3 (DE 4-1). TCMI and Plaintiff International Yacht Bureau ("IYB") entered into an agreement

effective September 1, 2006 ("Agreement").[1] (DE 4-2). The Agreement designated IYB an

_____

[1]The exact title of the contract was "AGREEMENT TO GOVERN THE DELEGATION of STATUTORY
SURVEY AND CERTIFICATION SERVICES, ISM CODE VERIFICATION AND CERTIFICATION SERVICES,
and ISPS CODE VERIFICATION AND CERTIFICATION SERVICES for YACHTS REGISTERED IN THE
MARSHALL ISLANDS between THE REPUBLIC OF MARSHALL ISLANDS represented by THE TRUST
COMPANY OF THE MARSHALL ISLANDS, INC. and THE OFFICE OF THE MARITIME ADMINISTRATOR for

Appointed Representative ("AR").  As such, IYB was given the authority to survey yachts and to issue "Marshall Islands statutory certificates."  Agreement, sec. 1 and 2 (DE 4-2).

In particular, IYB was authorized to "measure Yachts, conduct initial and subsequent surveys, periodic inspections, examinations, including dry-docking examinations, audits and assessments of Companies and Yachts and safety inspections to determine compliance with the mandatory requirements of the international conventions and codes as they may apply;" and to "issue and, in consultation with the Administration, withdraw, cancel or invalidate Marshall Islands statutory certificates in accordance with the results of such surveys, inspections and audits." Agreement, sec. 2.4 (DE 4-2).  The Agreement went on to state that "[i]n fulfilling the duties and responsibilities hereunder, the AR shall as applicable make recommendations to yacht owners as to compliance with the specific requirements of the Yacht's certificate or the Applicable Instruments." *Id.*  With the exception of the safety inspection fees, IYB was to be compensated by the parties requiring its services and not by TCMI.  Agreement, sec. 6.1 (DE 4-2).[2]

_____

THE REPUBLIC OF MARSHALL ISLANDS and INTERNATIONAL YACHT BUREAU, INC."  (DE 4-2).

[2]Annex V incorporated another contract into the Agreement.  (DE 4-2, pp. 34-37).  That document was dated March 14, 2005 and titled "Nautical Inspection Agreement." *Id.*  The Nautical Inspection Agreement was made between The Republic of the Marshall Islands, Office of the Maritime Administrator and U.S. Maritime Institute, Inc. *Id.*  Jake Desvergers signed that contract on behalf of the U.S. Maritime Institute, Inc. as its President. *Id.*  The Nautical Inspection Agreement  called for the U.S. Maritime Institute, Inc. to provide closing inspections to vessels seeking to register under the Marshall Islands flag, to inspect vessels registered under the Marshall Islands flag, and to investigate incidents involving vessels registered under the Marshall Islands flag. *Id.*  Further, the U.S. Maritime institute was to be compensated by the Administrator for its services. *Id.*  The Nautical Inspection Agreement also contained its separate arbitration clause:

> 9. Arbitration.  All disputes, controversies, or difference which may arise between the parties, out of or in relation to or in connection with this Agreement, or for breach thereof, shall be finally settled in Virginia, United States of America, unless the parties agree otherwise, in accordance with the International Arbitration Rules of the American Arbitration Association.  The award rendered by the arbitrator shall be final and binding upon both parties concerned.

*Id.*

Thus, the terms of the Nautical Inspection Agreement conflict with the terms of the main Agreement.  However, Defendant does not mention the provisions of the Nautical Inspection Agreement, and U. S. Maritime Institute, Inc. is not a party to this action.  Rather, Defendant is attempting to compel arbitration in New York pursuant to the arbitration clause, section 6.7.2, of the main Agreement.  Accordingly, the Court will not consider the terms of the Nautical Inspection Agreement.

TCMI is not a party to this action.  Defendant International Registries, Inc. ("IRI") is a Virginia corporation, and its purpose is to provide technical and administrative services to TCMI. *Id.* ¶ 4 (DE 4-1).  For example, IRI performs investigative, seafarer identification, marketing, communication, legal and regulatory support functions for TCMI.  *Id.*  Likewise, when a yacht seeks to register under the flag of Marshall Islands, IRI registers it.  *Id.*  IRI and TCMI have an oral contract.  Kirby Dep., p. 13 (DE 29-1).  To facilitate performance of IRI's services, many of the IRI officers have been deputized and appointed Deputy Commissioners of Maritime Affairs or Special Agents of the Republic of Marshall Islands.  Apr. 22, 2013 Kirby Aff., ¶ 5 (DE 4-1).

The business relationship between the Marshall Islands through TCMI and IYB flourished for a while resulting in an increase in vessels registered under the Marshall Islands flag.  Compl., ¶¶ 14-16 (DE 1-2).  Plaintiffs assert that in 2010 IRI personnel became dissatisfied because IYB was strictly enforcing safety standards.  This strict enforcement resulted in vessels not passing the inspections and not being able to register under the Marshall Islands flag.  This was contrary to IRI's goals.  *Id.*, ¶¶ 17-20.  Plaintiffs aver that IRI personnel defamed IYB and Jacob Desvergers, one of the Plaintiffs in this action and the principal of IYB,  and advised ship owners and managers to hire other inspectors.  *Id.*  Therefore, Plaintiffs initiated this action for defamation (Count I) and tortious interference with the "advantageous business relationships with the yachts" (Count II).  *Id.*

The Agreement between TCMI and IYB contained the following arbitration clause:

> 6.7.2.  Should any dispute arise out of this Agreement which has not been resolved by private negotiations between the parties, the matter in dispute shall be resolved by arbitration and shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The proceedings shall be conducted in accordance with the Rules of the Society of Maritime Arbitrators, Inc. The arbitrators shall be members of the Society of Maritime Arbitrators, Inc.

(DE 4-2).

The Agreement also specified that it was governed by the laws of the state of New York. Agreement, sec. 6.7.1 (DE 4-2).  IRI moved for a stay of this action in favor of compelling arbitration in New York.  Plaintiffs oppose the motion because neither Jacob Devergers nor IRI are signatories to the Agreement, and because the claims in this case are beyond the scope of the arbitration clause.

## II. Discussion

The Supreme Court has articulated a strong federal policy favoring arbitration agreements. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). One of the purposes of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, is to "ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985).  As such, arbitration agreements must be "rigorously enforce[d]" by the courts. *Id.* at 221.  Further, the FAA directs the court to stay the trial until arbitration has been concluded if the case involves an issue referable to arbitration.  9 U.S.C.A. § 3 (West).

For the purposes of a motion to compel arbitration, the allegations in the complaint should be assumed to be true.  *Int'l Underwriters AG v. Triple I: Int'l Investments, Inc.*, 533 F.3d 1342, 1345 (11th Cir. 2008).  The court may consider affidavits.  *See Samadi v. MBNA America Bank, N.A.*, 178 Fed. App'x 863, 866 (11th Cir. 2006).  In fact, the party opposing a motion to compel arbitration has an affirmative duty of coming forward with affidavits or deposition transcripts to show that the court should not compel arbitration.  *See Sims v. Clarendon Ins. Co.*, 336 F. Supp.2d 1311, 1314 (S.D. Fla. 2004).  Federal substantive law of arbitrability determines which disputes are within the scope of the arbitration clause.  *Lawson v. Life of the South ins. Co.*, 648 F.3d 1166, 1170 (11th Cir. 2011).  In contrast, the question whether a non-party can enforce an arbitration clause is governed by state law. *Id.* at 1170-71.

4

Plaintiffs argue that (a) their claims are beyond the scope of the arbitration clause; (b) IRI cannot enforce the Agreement because it was not a party to it; and (c) the Agreement cannot be enforced against Plaintiff Jacob Desevergers because he likewise was not a party to the Agreement. The Court will focus on whether the claims in this case fall within the scope of the arbitration clause. Courts have struggled with the question of how broadly arbitration clauses should to be construed. *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1114 (11th Cir. 2001) (noting that the case law gives no clear answer to the question whether a dispute is related to a contract). "Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted." *Gregory v. Electro-Mech. Corp.*, 83 F.3d 382, 384 (11th Cir. 1996). Thus, this is a very fact intensive inquiry. *See id.* The Eleventh Circuit has directed the courts to focus on whether the tort in question was an "immediate, foreseeable result of the performance of contractual duties." *Telecom Italia, SpA*, 248 F.3d at 1116. The Agreement here contains an "arising out of" arbitration clause. Agreement, sec. 6.7.2 (DE 4-2). For such a clause to apply, there must be a direct relationship between the dispute and the performance of duties specified by the contract. *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011) (citing *Telecom Italia, SpA*, 248 F.3d at 1116).

For example, in the case of *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Investments*, 553 F.3d 1351 (11th Cir. 2008), Hemispherx granted Bioclones a license for the development, manufacture, use, and sale of certain products. 553 F.3d at 1354. Hemispherx was obligated to furnish the technology, and Bioclones was obligated to create a separate corporation, which both companies would co-own, to manufacture the products. *Id.* Hemispherx claimed that eight years later Bioclones, along with some other defendants, initiated a hostile takeover of

5

Hemispherx, and in the process violated securities laws and committed fraud.  *Id.* at 1357-58. Bioclones attempted to enforce the arbitration clause contained in the licensing agreement.  *Id.* However, the Eleventh Circuit held that it was not foreseeable that years later defendants would make misrepresentations to Hemispherx in the course of discussing an equity investment because the investment was not contemplated in the licensing agreement.  *Id.*

Here, the purpose of the Agreement was to "delegate authority to the Appointed Representative" to perform certain surveys and inspections. Further, Plaintiffs allege tortious interference with Plaintiffs' business relationship with the yacht owners rather than with TCMI. Thus, at the time the Agreement was created it was not contemplated or foreseeable that several years later a non-party assisting TCMI would allegedly defame IYB to IYB's yacht-owner clients and would allegedly interfere with IYB's business relationships with the yachts.

Plaintiff makes factual allegations of IRI's tortious conduct in paragraphs 21 through 37 of the Complaint.  Compl.  (DE 1-2).  Paragraphs 21, 22, 23, 26, 27, and 31 involve situations where IRI allegedly interfered in IYB's relationship with a yacht owner or manager before IYB was able to perform the investigation, inspection or survey of the vessel and where IYB lost the business as a result.  None of the allegations of defamation involve IRI's representative's statements to TCMI. Accordingly, the allegations in paragraphs 21, 22, 23, 26, 27, and 31 are not directly related to IYB's performance under the Agreement with TCMI.

Further, paragraphs 24 and 34 involved IYB's supervision of yacht construction.  These services are not subject to the Agreement.  Also, in paragraph 24 the allegation is that IRI informed the yacht builder that IYB's surveys were not required for the registration with the Marshall Islands. This does not implicate the Agreement.  In paragraph 34, Plaintiffs assert that a representative of IRI

falsely indicated to a naval architect and the yacht's management that IYB made incorrect stability calculations.  Stability review is a function which IYB was authorized to perform under the Agreement.  *See* Agreement, Table 1 (DE 1-3).  However, it was not foreseeable when the Agreement was formed that it would apply to  a situation years later when a third-party makes statements to IYB's clients about IYB's services.

Paragraphs 29, 33, 35 and 36 likewise involved situations very far removed from the Agreement.  For example, in paragraph 29 Plaintiffs allege that they intended to give an award jointly with IRI to a captain who had been involved in a rescue at sea, but that IRI went forward without IYB.  This allegation has no connection to the Agreement.  Further, in paragraph 33 IYB states that the personnel in one of IRI's offices refused to give IYB a fee quote, but that another office released the requested information.  Because under the Agreement IYB was to be compensated by the client and not by IRI or TCMI, this refusal to quote was not directly connected to the performance under the Agreement.  Similarly, in paragraph 37 Plaintiffs allege that IYB performed a service for a yacht owner, but that due to IRI's interference, the owner refused to pay.  Again, because IYB's fees were clearly subject to a contract between IYB and the yacht owner, the Agreement is not directly implicated.  Paragraph 35 simply alleges that IRI and IYB entered into a separate oral fee sharing contract, but the amount of the fee was never finalized.  Lastly, in paragraph 36 Plaintiffs allege that one of IRI's staff members stated to a yacht broker at lunch that "things were weird" between him and Desvergers because of difference in opinions regarding the Marshall Islands' regulations.  While Marshall Islands' regulations were important for the inspections that IYB had the authority to perform, and were also the topic of conversation with the yacht broker, the conversation itself had nothing to do with IYB's performance under the Agreement.

Plaintiffs admit that "statutory surveys and certifications" were involved in the situations described in paragraphs 25, 28, 30, and 32 of the Complaint.   However, these allegations are similarly removed from the Agreement.  In paragraph 25, the allegation is that IRI instructed IYB to withdraw a yacht's safety certification for not obtaining an annual survey, but that at the same time IRI transferred IYB's proprietary records to IYB's competitor in order for the competitor to enter into a contract with the yacht's owner.  In paragraph 28 Plaintiffs aver that IRI advised a yacht captain to change the vessel's registration from commercial to private to avoid certain regulations, and that IYB was "legally required to verify compliance." IRI also advised the captain to not involve IYB.

In paragraph 30, Plaintiffs allege that one of the yachts certified by IYB and registered with Marshall Islands' was overdue for an annual survey, and that IRI imposed a detention preventing the yacht from sailing.  IRI falsely informed the yacht's owner's representative that the detention  was imposed at the request of IYB, and encouraged the representative to contact another survey company. Lastly, in paragraph 32 Plaintiffs state that IRI secretly transferred the statutory certificates issued by IYB to another company in violation of Marshall Islands' requirements.  Again, all these alleged instances of interference took place before IYB was able to perform the survey, and these situations are not directly related to the Agreement or to IYB's performance.

Similar to the situation in *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Investments*, 553 F.3d 1351 (11th Cir. 2008), the alleged defamation and tortious interference by third-party IRI with Plaintiffs' business relationships with the yachts were not an immediate and foreseeable result of IYB's performance under the Agreement between IYB and TCMI.  It is likely that either registration, potential registration, or another function of IRI on behalf of the Marshall Islands or

TCMI was involved in all factual scenarios alleged in the Complaint because otherwise IRI would not have had a reason to interact with the yacht owners. However, this does not make the allegations and the torts in question immediate and foreseeable results of IYB's performance under the Agreement.

Likewise, the facts that TCMI is Marshall Islands' Maritime Administrator and that IRI and TCMI have a business relationship with some of IRI's staff having been deputized by the government of Marshall Islands are not dispositive of foreseeability or of direct connection. Further, Plaintiffs do not allege any wrongdoing on the part of TCMI, the only other party to the Agreement with IYB. Lastly, Plaintiffs do not allege that IRI interfered in IYB's relationship with TCMI.

Based on the above evidence, the Court concludes that the allegations in this case are not within the scope of the arbitration clause, section 6.7.2. Thus, it is not necessary to decide whether IRI can enforce the Agreement. Lastly, the Court did not consider the Supplemental Affidavit of Jacob Desvergers (DE 31), which did not address the issue of arbitrability.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant International Registries, Inc.'s Motion to Stay this Action in Favor of Compelling Arbitration in New York (DE 4) is **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 3rd day of March, 2014.

_____

KENNETH A. MARRA
United States District Judge

9